# *In re* Mitchell.

### Contempt Proceedings.

### (Decided March 27, 1916. 71 South. 467.)

ORIGINAL proceedings in Supreme Court.

Be it ordered by the court that one James A. Mitchell, Esq., of Birmingham, Ala., be and is hereby cited to appear before this court at Montgomery, Ala., on Monday, the 27th day of March, 1916, and then and there show cause why his name should not be purged from the roll of practicing attorneys in this court, and why he should not be adjudged guilty of contempt of this court (one or both), because of the writing, publishing, or utterance of a certain publication appearing in a weekly newspaper called the Alabama Democrat, published at Montgomery, Ala., on February 10, 1916, in words and figures, as follows, to-wit (the substance of which sufficiently appears in the specifications) :

### SPECIFICATIONS.

Be it ordered by the court that whereas, James A. Mitchell, Esq., a practicing attorney of Birmingham, Ala., and whose name appears upon the roll of attorneys of this court, was on the 21st day of February, 1916, cited to appear on March 27, 1916, and answer said citation, the issuance of same having been induced by a certain publication of February 10th in the Ala-

bama Democrat, and a copy of which was set out in hæc verba as an exhibit:

Now, therefore, in order that the said Mitchell be specifically informed as to the part or parts of said publication that impressed the court as transcending the bounds of privileged criticism and which caused the said citation, the following specifications are made:

(1) First. In criticising and commenting upon the opinion in the case of *Ex parte Seals Piano & Organ Co.*, 188. Ala. 443, 66 South. 146, you dealt with a cause that was pending in this court for final decision, and you are called upon to answer whether or not you knew of the pendency of said cause, and whether or not your attack upon the first opinion was made with the intent of intimidating or influencing the court upon the final determination of said cause.

(2) Second. In your criticism of and comment upon the opinion of this court in the case of *Manfredo v. Manfredo*, 191 Ala. 322, 68 South. 157, appears the following language:

"I accepted the decision in this case, however, with patience, barring possible temporary observations more or less vituperative, and finally concluded that, as my clients were foreigners, it might have been expecting too much to look for a decision in their favor against a widow residing here."

(3) Third. In the criticism of and comment upon the opinion of this court in the case of *Sulzby v. Palmer, infra,* 70 South. 1, appears the following language:

"It looks like the court was groping around in the dark hunting for some pretext under which the complainant's rights could be defeated. It is difficult to conceive what the considerations would be which would actuate a court of last resort to go to such lengths to beat a man out of his money which he had loaned the defendant in good faith in order to build a home for her which had sheltered her and her family for many years."

The court entertains the opinion that the expressions above set out, not only transcend the bounds of propriety and privileged criticism, but are an unwarranted attack, direct, or by insinuation and innuendo, upon the motives and integrity of this court, and make out a prima facie case of improper conduct upon the part of a lawyer who holds a license from this court and who is under oath to demean himself with all good fidelity to the court as well as to his client.

[In re Mitchell.]

The respondent made the following answer:

Now comes James A. Mitchell, and for answer to the writ issued out of this honorable court on the 21st day of February, 1916, commanding him to appear and show cause why his name should not be purged from the roll of practicing attorneys in this court, and why he should not be adjudged guilty of a contempt of this court (one or both), because of the writing, publishing, or utterance of a certain publication which appeared in the Alabama Democrat, a newspaper, on February 10, 1916, and more particularly because of those certain parts of said writing specified in an order of this honorable court, copy of which is this day first received by him, says: That he appreciates full well that this honorable court would not for a moment consider that legitimate criticism uttered by this defendant in the exercise of his right to discuss the official work of officers elected to their duties by popular vote involves contempt of the most lofty positions those officers hold, and that any part or parts of said publication which may have appeared to transcend the bounds of privileged criticism he is glad to have this opportunity to explain or retract.

1. In answer to the first specification contained in the said order, by which this respondent is notified by the court that in criticising and commenting upon the opinion in the case of *Ex parte Seals Piano & Organ Company* he dealt with a cause pending in this court for final decision, this respondent says that the decision in the case *Ex parte Seals Piano & Organ Company* to which his criticism referred was upon an original application for a writ of mandamus directed to a circuit judge, and was decided by this court in July, 1914; that when he wrote the matter commenting upon the same he did not know that there was any other matter arising out of the same litigation in the court below which was still pending in this court; that he was in no way connected with the cause of action or the litigation, either as party or counsel; and that his criticism and discussion of the decision on the former appeal was in no way intended by him to influence or intimidate the court upon the final determination of the cause.

2. By the second specification in the said order the use by this respondent of the following language in connection with his criticism of the decision of this honorable court in the case of *Manfredo v. Manfredo* is noted as transcending the bounds of privileged criticism: "I accepted the decision in this case, how-

[In re Mitchell.]

ever, with patience, barring possible temporary observations more or less vituperative, and finally concluded that, as my clients were foreigners, it might have been expecting too much to look for a decision in their favor against a widow residing here."

By way of palliation of this quoted language this respondent begs leave to call to the attention of the court the well-recognized rule of this honorable court, as well as of courts in other jurisdictions, to prefer as far as possible local claimants in the application of local assets where foreign administrations or foreign assignments for the benefit of creditors are involved. This defendant appreciates, however, that for the court to have applied that rule in reaching the decision in the case in question would have involved a distinct extension of the doctrine, and an extension which the opinion does not reveal the intention of the court to have made. The use by this respondent of the quoted language was therefore highly improper, without indicating at the same time the line of reasoning which would have made his suggestion innocent. This defendant therefore hopes that the court will pardon his use of the language quoted, that it will allow him to qualify it as above indicated, and that it will accept his statement that he meant in no way to reflect upon the motives and sense of justice of the court by the use of the same.

3. By the third specification in the said order the use by this respondent of the following language in connection with his criticism of the decision of this honorable court in the case of *Sulzby v. Palmer* is noted as transcending the bounds of privileged criticism: "It looks like the court was groping around in the dark hunting for some pretext under which the complainant's right could be defeated. It is difficult to conceive what the considerations would be which would actuate a court of last resort to go to such lengths to beat a man out of his money which he had loaned the defendant in good faith in order to build a home for her which had sheltered her and her family for many years."

While disclaiming any intention to charge this honorable court with improper motives, or with any purpose beyond attempting to support what this respondent believed to be the court's first immature and erroneous conclusion upon the case, he realies on reading his article after it appeared in print, that the above language went too far, and might be construed to impugn the integrity of the court. He therefore profoundly regrets having used the language noted, prays leave of the court to retract it, and

apologizes for having allowed his criticism in the heat of disappointment to contain an expression capable of so misrepresenting both the intent of the writer and the motives of this honorable court.

And this defendant further says that in the writing and publishing of the said article, a copy of which is substantially set out and attached to the said writ, this respondent did not intend any contempt of or towards this honorable court, that the said publication was not made with intent to misrepresent this court, or to bring this court into contempt or ridicule, and that the words used by him in the said publication were not used by him with intention to cast upon this court or any of the members thereof any imputation or charge of corruption or lack of integrity, nor were they used with intent to embarrass or impede the administration of justice.

And now, having fully answered, this respondent prays that said rule be discharged, and that he be dismissed with his costs in this behalf sustained.

PER CURIAM.— (4) Be it ordered by the court that, the said James A. Mitchell, the respondent, having disclaimed any intention of intimidating or influencing this court by the criticism of its opinion in a pending cause, and having satisfactorily qualified, explained, and withdrawn the expressions set out in specifications 2 and 3, and apologized for the use of same, the rule nisi is dissolved, and the respondent is discharged.